1
2
3
4
5
6
7                           **UNITED STATES DISTRICT COURT**

8                              **DISTRICT OF NEVADA**

9

10   UNITED STATES OF AMERICA,        )        3:13-cr-00011-HDM-WGC
                                      )        3:14-cv-00650-HDM
11                   Plaintiff,       )
                                      )
12   vs.                             )        ORDER
                                      )
13   BYRON TRENT DAVIS,               )
                                      )
14                   Defendant.       )
     _____ )
15
16          Before the court is the defendant's motion to vacate, set

     aside, or correct sentence pursuant to 28 U.S.C. § 2255 (#45).  The
17
     government has responded (#64).
18
     **I. Procedural History**
19
20          On January 23, 2013, the grand jury returned an indictment

     charging defendant with a single count of receipt of child
21
     pornography.  On August 28, 2013, defendant pleaded guilty to a
22
     superseding information that charged him with one count of
23
     possession of child pornography.  On December 10, 2013, the court
24
     sentenced defendant to 63 months in prison and a 15-year term of
25
     supervised release. Defendant did not file any notice of appeal.
26
     Instead, on December 15, 2014, he filed his petition for relief
27
     under § 2255.
28

                                      1

## II. Facts

On November 27, 2012, law enforcement officers executed a search warrant of defendant's home.  The agents entered the home with their guns drawn.  Defendant, his wife, and their then five-year-old son were all present.

The agents interviewed defendant and seized his computers and other electronic equipment.  During the interview, defendant admitted that he had viewed child pornography on his computer. Forensic analysis of the equipment confirmed that defendant had accessed about 100 videos and 100 images of child pornography, and that the files included depictions of prepubescent children and sadistic and masochistic conduct.

Defendant claims he was in shock and emotional distress during the search, and that immediately after he was taken to a hospital and admitted overnight.  His emotional distress persisted throughout the criminal proceedings, defendant claims, and he suffered from very severe depression, anxiety, panic attacks, and PTSD.

The day after the search, defendant met with attorney Mary Boetsch.  Defendant claims that Boetsch said she specialized in child pornography cases and was an expert.  Boetsch denies telling defendant she was an expert or that she specialized in child pornography cases.  (Doc. #65 (Boetsch Aff. 2)).  Defendant claims he told Boetsch that he was innocent and wanted to fight the charges.  He explained that any child pornography on his computer had been accidentally downloaded and immediately deleted after being found.  (Doc. #45-2 (Decl. 15)).  Defendant claims that Boetsch said that "she would seek to 'make this go away' without

charges being brought; and that she would seek to have the charges dropped if an Indictment was issued." (Doc. #45 at 10). Boetsch denies telling defendant that she could "make it go away." (Doc. #65 (Boetsch Aff. 2)).

Boetsch told defendant that she charged $300.00 per hour and required a $10,000.00 retainer. Defendant asserts that Boetsch said this would probably cover all fees unless the case went to trial, which would cost an additional $15,000.00 to $20,000.00. (Doc. #45 at 10). Boetsch says she told defendant she had "no idea how much it would ultimately cost." (Doc. #65 (Boestch Aff. 2)). A few days after their meeting, defendant retained Boetsch to represent him.

Boetsch reviewed the evidence, including the tape recorded interview and the child pornography downloads on defendant's computers. (Doc. #65 (Boestch Aff. 2-3)). The interview Boetsch found "ambiguous in places and devastating in others." (Doc. #65 (Boestch Aff. 2)). Boetsch concluded that while an argument for suppression could be made, she did not think it would prevail. *Id.* Further, even if the statements were suppressed, she saw no basis for suppression of the search results, and defendant's computers clearly contained deleted child pornography images and videos. *Id.* at 2, 4 ("[T]here was never any question but that . . . child pornography images would be found on his hard drive."). Boetsch met with the prosecutor and two other defense attorneys and after those meetings determined that the software used by the government to ascertain the number of videos on computers was "quite reliable." *Id.* at 3-4. Boetsch and her investigator then tried to replicate whether child pornography could be accidentally

3

downloaded in the way defendant claimed, but they could not do so. *Id.* at 4.  Defendant's explanation of accidental downloads would require his testimony, Boetsch concluded, but not only was part of defendant's explanation incredible, after several practice sessions it was evident defendant's testifying itself was problematic, and defendant agreed that he should not testify.  *Id.* at 2-3.

At that point, "the focus of the case . . . became receiving probation." *Id.* at 5.  Probation was unavailable on the original charge, and the government's position was that defendant either plead guilty to the original charge or, if he went to trial, he could face additional charges.  *Id.*  Boetsch began negotiating in an attempt to obtain an agreement that would allow defendant to plead to a lesser charge.  *Id.*

By July 2013, defendant was experiencing financial difficulties.  Defendant told Boetsch that he was not going to be able to pay her much longer.  A few weeks later, defendant claims that Boetsch told him that "his financial condition left him no choice but to cut a plea deal," that he could not go to trial, that she would have to quit if he ran out of funds, that he "better have a 'Plea Deal' in place before she did; because at that point [he] would not have <u>any</u> attorney," and that she would try to get him a "Plea Deal for Probation."  (Doc. #45 at 10; Doc. #45-2 at 23 (Davis Decl. ¶ 89)).  Boetsch denies telling defendant that she would abandon him if he could not pay and says she in fact advised him they could take the matter to trial.  (Doc. #64 (Boetsch Aff. 6-7)).

Eventually, the government agreed to allow defendant to plead

to a lesser charge of possession.[1]  *Id.* at 5-6.  On August 27,
2013, Boetsch advised defendant of the plea offer.  Defendant
claims that Boetsch said it was a plea deal "for probation."
Boetsch denies this.  In fact, she says she advised defendant that
while they could argue for probation, the decision was ultimately
up to the court and defendant could very well be facing prison
time.  (Doc. #65 (Boetsch Aff. 6)).  Boetsch claims that she
"expressed [her] belief to [defendant] on several occasions . . .
that [she] did not believe he would get probation but that [they]
would certainly fight for it."  *Id.* at 7.  She states that
defendant "was not happy with that opinion but indicated . . . that
he understood."  *Id.*

On August 28, 2013, defendant signed the plea agreement, under
which he agreed to plead guilty to one count of possession of child
pornography.  In the agreement, he also stipulated to a Guidelines
calculation that was based on several enhancements and recognized
that his interview with agents on November 27, 2012, was
consensual.  Defendant maintains that he did not knowingly agree to
these terms because he did not read the agreement before signing
and relied on Boetsch's alleged representations that it was a plea
agreement "for probation."

After signing the agreement, defendant appeared before the
court and entered his change of plea.  Following a lengthy canvass
during which the defendant admitted to the court that his plea was
being entered freely and voluntarily, that his attorney had not

___

[1] In part, Boetsch claims, this concession came after Boetsch pointed
out that motions to suppress could be filed based on the agents' conduct
during the search, including their pointing a gun at defendant's five-year-
old child.

promised him anything or threatened him in order to get him to plead guilty, and that he was indeed guilty of the offense to which he was pleading, the court accepted defendant's change of plea.

Defendant now claims that his plea was not knowing and voluntary and that he did not in fact agree to the terms of the plea or the admissions made in the agreement. Defendant claims that before changing his plea, Boetsch gave him "specific and stern warnings <u>not</u> to 'make any waves,' and to 'just say yes' to whatever the Judge asks." (Doc. #45-1 at 8). Defendant further asserts that he entered the plea agreement only because Boetsch threatened to abandon him if he did not, even though he believed himself to be innocent. Finally, defendant asserts that he was mentally incompetent because he was abusing medications and alcohol and was so depressed and anxious that he "could barely function."

**III.  Standard**

Pursuant to § 2255, a federal inmate may move to vacate, set aside, or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *Id.* § 2255.

Defendant's petition raises eight grounds for relief alleging ineffective assistance of counsel. At least one ground claims ineffective assistance based on an alleged conflict of interest.

Ineffective assistance of counsel is a cognizable claim under § 2255. *Baumann v. United States*, 692 F.2d 565, 581 (9th Cir. 1982). In order to prevail on a such a claim, the defendant must meet a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687

1 (1984).  First, the defendant must show that his counsel's
2 performance fell below an objective standard of reasonableness.
3 *Id.* at 687-88.  "Review of counsel's performance is highly
4 deferential and there is a strong presumption that counsel's
5 conduct fell within the wide range of reasonable representation."
6 *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir.
7 1986).  Second, the defendant must show that the deficient
8 performance prejudiced his defense.  *Strickland*, 466 U.S. at 687.
9 This requires showing that "there is a reasonable probability that,
10 but for counsel's unprofessional errors, the result of the
11 proceeding would have been different.  A reasonable probability is
12 a probability sufficient to undermine confidence in the outcome."
13 *Id.* at 694.

14      "Effective assistance of counsel 'includes a right to
15 conflict-free counsel.'"  *United States v. Baker*, 256 F.3d 855,
16 859-60 (9th Cir. 2001), *amended* 2001 WL 474147 (9th Cir. 2001).
17 "To establish a Sixth Amendment violation of defendant's right to
18 the effective assistance of counsel based on an attorney's conflict
19 of interest, 'a defendant must show: (1) his attorney actively
20 represented conflicting interests, and (2) an actual conflict of
21 interest affected his attorney's performance.'"  *Quintero v. United
22 States*, 33 F.3d 1133, 1135 (9th Cir. 1994).  A conflict can include
23 a conflict between a client and his lawyer's personal interests.
24 *Baker*, 256 F.3d at 860.

25 **IV. Analysis**

26      **A. Ground One**

27      Defendant's first ground for relief asserts ineffective
28 assistance of counsel based on a financial conflict of interest.

7

1    Defendant claims Boetsch coerced him into pleading guilty after he
2    told her he was running out of money and that Boetsch's interest in
3    getting paid improperly – and to defendant's detriment – conflicted
4    with defendant's interests.

5        The government argues that defendant's current claims are
6    contrary to sworn statements he made to the court during his change
7    of plea hearing.[2]  The court agrees.  At his change of plea,
8    defendant repeatedly acknowledged that he was entering his plea
9    freely and voluntarily and that no one had threatened him in order
10   to get him to change his plea.  At the hearing, the following
11   exchanges occurred:

12        THE COURT:      And you clearly understood what was in the plea
13                        agreement; is that right?
14        THE DEFENDANT: Yes, Your Honor.
15        THE COURT:      And you went over that with your counsel, Ms.
16                        Boetsch?
17        THE DEFENDANT: I did.
18        THE COURT:      And you're satisfied with her representation of
19                        you?
20        THE DEFENDANT: Yes, Your Honor.
21        . . . .
22        THE COURT:      Did you execute this waiver freely and
23                        voluntarily?

24

25          [2] The government argues that defendant's claim that the plea was not
26   knowing and voluntary is procedurally defaulted because it was not raised
     on direct review.  *Bousley v. United States*, 523 U.S. 614, 621 (1998).
27   However, the nature of defendant's claim in this regard is such that it
     could not have been fully reviewed on direct appeal, as he claims his plea
28   was based on the incompetent advice of counsel.  Such claims are not subject
     to procedural default.  *See Massaro v. United States*, 538 U.S. 500, 504-05
     (2003).

1       THE DEFENDANT: I did, Your Honor.

2       THE COURT:      Did anyone threaten you or promise you anything

3                       in exchange for doing that?

4       THE DEFENDANT: No, sir.

5       . . . .

6       THE COURT:      Did you freely and voluntarily sign the plea

7                       agreement?

8       THE DEFENDANT: Yes, Your Honor.

9       THE COURT:      Did anyone force you to sign it?

10      THE DEFENDANT: No, sir.

11      THE COURT:      Did anyone promise you anything other than

12                      what's in the agreement itself?

13      THE DEFENDANT: No, sir.

14      THE COURT:      Has your attorney promised you anything other

15                      than what's in the plea agreement?

16      THE DEFENDANT: No, sir.

17      . . . .

18      THE COURT:      Have you entered that plea freely and

19                      voluntarily?

20      THE DEFENDANT: Yes, Your Honor.

21      THE COURT:      Has anyone threatened you or promised you

22                      anything to have you plead guilty?

23      THE DEFENDANT: No, Your Honor.

24      THE COURT:      Has your attorney Ms. Boetsch promised you

25                      anything to plead guilty?

26      THE DEFENDANT: No, Your Honor.

27  (Tr. of Change of Plea Hr'g 5-8, 20-21).

28      "Statements made during a guilty plea hearing carry a strong

9

presumption of veracity in subsequent proceedings attacking the plea." *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) (internal punctuation omitted); *see also United States v. Grewal*, 825 F.2d 220, 223 (9th Cir. 1987); *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987).  The court is entitled to credit such sworn testimony over subsequent conflicting statements. *United States v. Castello*, 724 F.2d 813, 815 (9th Cir. 1984).

Defendant appears to claim that his sworn responses cannot be believed because he was mentally incompetent – due to substance abuse, medications, and emotional distress – and because Boetsch told him to say yes to everything.  The court finds these claims to be without merit.  Defendant offers no evidence to support his claim of substance abuse, a claim that is in fact contradicted by his own expert's testimony at sentencing that defendant "had no present or past substance abuse problems." (Doc. #60 (Sent. Tr. 12)).  Defendant likewise offers no evidence that he was taking medication that made him groggy or unable to comprehend the proceedings – in fact, when the court asked defendant whether he was on any medication, he said no.  (Doc. #58 (Change of Plea Hr'g Tr. 6)).  While it is clear that defendant was emotional throughout these proceedings, defendant has offered no evidence that his state was such that he could not understand what was going on; in fact, his responses to the court's questions make clear that he did understand.  Finally, defendant's claim that he should not be held to the answers he gave at his change of plea because he was not answering truthfully on advice of counsel is borderline frivolous. Defendant's statements were made under sworn oath.  Moreover, defendant did not simply say yes to everything; his answers varied

depending on the question, between yes and no, and he acknowledged in his own words that he had accessed with an intent to view child pornography.

The court therefore finds defendant's current claim that he was coerced into pleading guilty without merit and contrary to his sworn statements to this court.[3]  His claim of ineffective assistance of counsel based thereon is therefore **DENIED**.

### B. Ground Two

In his second ground for relief, defendant asserts that Boetsch was ineffective because she failed to investigate the case and failed to file a motion to suppress the evidence obtained during the search of his home and his interview with agents.

Defendant asserts that Boetsch should have investigated the validity of the search warrant and moved to suppress the evidence obtained during the search.  In order to show an attorney was ineffective for failing to file a motion to suppress, the defendant must show that the motion would have been "meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence . . . ."  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Defendant offers no evidence or argument as to why the search warrant would likely have been found invalid by this court.  Defendant has not made any showing that a motion to suppress the evidence seized during the search would have been successful.

---

[3] Moreover, Boetsch refutes the claims.  Boetsch states that "[a]t no time was the plea related to a financial issue on my part."  (Boetsch Aff. 2).  She says she "never told him [she] would desert him due to financial constraints and that he would have no attorney at all if he went to trial." (Boetsch Aff. 7).  She avers that she was willing and able to represent defendant through trial if he could not honestly plead guilty to the charge. (Boetsch Aff. 7).

1    Defendant asserts that Boetsch should have determined whether
2    the tape recording of his interview had been altered.  However,
3    defendant offers no evidence that the tape recording had been
4    altered.

5    Relatedly, defendant argues that Boetsch should have filed a
6    motion to suppress the statements he made during his interview.
7    Defendant argues that he was questioned without an attorney present
8    and that the agents had made him believe that he was in custody. He
9    asserts that when he requested an attorney, the agents "threatened"
10   him.  Defendant asserts that although his personal attorney called
11   while he was being interviewed, the agents did not let defendant
12   speak to him, did not stop the interview, and instead moved him
13   into another room to continue questioning.  Further, defendant
14   argues that he was interviewed under duress.

15   In the plea agreement, which defendant signed, defendant
16   admitted that the interview with agents was consensual.  (Doc. #25
17   at 5).  Defendant now claims it was not.  However, defendant
18   provides no evidence to support this claim, including importantly
19   the transcript of his interview or an audio recording thereof.  It
20   is therefore entirely unsupported.  In addition, the defendant
21   cannot show prejudice.  The defendant's computer contained multiple
22   deleted child pornography files.  Even without the admissions the
23   defendant made during his interview with the agents, there is no
24   reasonable probability that the defendant would have been
25   acquitted.

26   Finally, defendant asserts that Boetsch knew that a forensic
27   examination of the computer would have exonerated him of the
28   charges and that she was ineffective for failing to hire a forensic

12

1 expert.  Defendant has not shown that a forensic examination of the
2 computer would have shown he was innocent or would have changed how
3 Boetsch advised him.  In fact, Boetsch asserts that "[n]ever was
4 there expressed the idea that an expert search of his hard drive
5 would reveal he was innocent."  (Doc. #65 (Boetsch Aff. 4)).
6 Moreover, Boetsch did investigate the evidence on the computer and
7 attempted to verify Davis' explanation of how the images and videos
8 came to be there, but neither she nor her agent were able to do so.

9 Defendant has therefore failed to establish either deficient
10 performance or prejudice with respect to any of the claims raised
11 in this second ground for relief.

12 **C. Ground Three**

13 In his third ground for relief, defendant asserts that Boetsch
14 failed to file a motion to dismiss the charges, failed to "preserve
15 Rights," and improperly advised him to waive his speedy trial
16 rights.[4]

17 Defendant claims that Boetsch said she would make the case go
18 away without charges being brought, and that if she could not she
19 would work to get the case dismissed.  However, Boetsch never filed
20 any motion to dismiss the case, and defendant alleges she was
21 ineffective for failing to do so.  Defendant identifies no basis
22 for dismissal of the charge against him.  Further, defendant told
23 the court that he was satisfied with Boetsch's representation of
24 him and that she had not failed to do anything that he had asked
25 her to do.  (Doc. #58 (Tr. of Change of Plea Hr'g 6, 21)).

26 Defendant's assertion that Boetsch failed to "preserve Rights"

27

28
_____
[4] Defendant's third ground for relief contains additional assertions
that are the basis of other grounds for relief.

1   is vague and conclusory and therefore does not state any claim.

2       Defendant asserts that Boetsch improperly advised him to waive
3   his speedy trial act rights and that had she not done so the
4   charges against him would have been dismissed or the outcome of the
5   proceedings would have been different.  Defendant has not
6   established that if he had not waived his speedy trial rights he
7   would have been entitled to dismissal of the charges or that the
8   outcome of the proceedings would have been different in his favor.
9   Importantly, defendant has not established that in the absence of a
10  speedy trial waiver that his case would not have proceeded to trial
11  within the time limits of 18 U.S.C. § 3161.

12       Defendant has not established either deficient performance or
13  prejudice with respect to any of the claims raised in his third
14  ground for relief.

15      **D. Ground Four**

16       In his fourth ground for relief, defendant asserts that
17  Boetsch lied to him and tricked him into pleading guilty by telling
18  him that the government had agreed orally to a probation only plea
19  deal, that the agreement he was signing was for probation, and that
20  he should just say yes to all the court's questions at the change
21  of plea hearing – regardless of whether the answers were true.
22  Defendant asserts that Boetsch did not go over the terms of the
23  plea agreement with him.  In fact, defendant argues, the plea
24  agreement contains a number of false statements and admissions.
25  For these reasons, defendant asserts that he did not enter his
26  guilty plea knowingly and voluntarily.

27       Defendant's claim is contradicted by his signature on the plea
28  agreement, which represented that he had decided to plead guilty

voluntarily and no one had coerced him into doing so.  (Doc. #25 at
13).  It is further completely contrary to the statements he made at
his change of plea and sentencing hearings.  The defendant told the
court that he clearly understood what was in the plea agreement and
that he went over it with his attorney.  (Tr. Change of Plea Hr'g
5-6).  Further, the court asked the defendant whether the facts set
forth on page four of the agreement were true to the best of
defendant's knowledge, and defendant answered "yes."  *Id.* at 11.
The court also explained to defendant that it could sentence him
within or above the Guidelines' range up to maximum of ten years
imprisonment, which defendant indicated he understood.  *Id.* at 13.
The court later asked, "Is there anything at this point that you
don't understand that we've gone over?"  *Id.* at 19.  The defendant
answered, "No, sir."  *Id.*  The court then specifically discussed
with defendant that under the Guidelines range he was facing, he
could be sentenced to between 78 and 97 months in prison.  *Id.* at
19-20.  The court stated: "[E]ven if I were to sentence you at the
low end of the guideline range, you're looking at more than six
years imprisonment without the possibility of parole."  *Id.* at 20.
The court asked defendant if he understood that, and defendant
responded "Yes, Your Honor."  *Id.*  At no point in either the change
of plea hearing or the sentencing hearing did defendant express
surprise that he could be facing prison time when he believed that
he was entitled to probation.

     The defendant's sworn statements during his change of plea
hearing show that he understood he could be sentenced to a term of
imprisonment.  His current claim that he believed he could only
receive probation under the terms of the plea agreement therefore

lacks credibility.  Further, to the extent that defendant was aware
that he could face prison time but had been told by Boetsch that he
would receive only probation, such claim is belied by defendant's
admission on the record that no one had promised him anything in
exchange for pleading guilty.  The court concludes this claim is
entirely without merit.

**E. Ground Five**

Defendant asserts that Boetsch was ineffective with respect to
the Presentence Investigation Report ("PSR") because she failed to
object to several statements and recommendations therein.  The
court has reviewed the specific objections defendant asserts
Boetsch should have made, set forth in his declaration from pages
83 to 89, and concludes that all such objections were either
actually made by Boetsch, are without merit, or were based directly
on admissions made by defendant in his plea agreement. Accordingly,
defendant has not established ineffective assistance of counsel
with respect to the alleged failure to object to the PSR.

Relatedly, defendant asserts that he did not know that a PSR
was going to be prepared, did not know what a PSR was, and did not
see or discuss the PSR with counsel before sentencing.  These
assertions are contradicted by the record and are without merit.
The court advised the defendant that a presentence report was going
to be prepared.  (Doc. #58 (Tr. of Change of Plea Hr'g 28-29)).
Further, the PSR was fully discussed in front of the defendant at
the time of sentencing, and at no time did defendant raise any
objections to the PSR – other than those made in writing by his
counsel – or advise the court that he allegedly had not seen or
discussed the PSR with counsel.  (Doc. #60 (Sent. Tr. 2, 85, 95)).

16

1  In addition, the defendant has failed to show that he was
2  prejudiced by any alleged failure of counsel to discuss or review
3  the PSR with him.

4  **F. Ground Six**

5  Defendant asserts that Boetsch was ineffective with respect to
6  the sentencing memorandum because in it she: (1) improperly
7  admitted criminal conduct; (2) did not argue for the terms of an
8  "oral plea deal,"; (3) failed to object to "erroneous
9  enhancements"; and (4) failed to argue for a downward departure or
10  probation.[5]

11  1. The sentencing memo included a description of the criminal
12  conduct to which defendant pleaded guilty.  It was therefore not
13  prejudicial or ineffective for Boestch to include such information
14  in the memo.  Further, to the extent that defendant contests
15  inclusion of the statements he made during his interview with
16  agents, Boestch did attempt to clarify the statements defendant
17  claims were misconstrued.  (Doc. #36 at 3).  Although defendant
18  asserts that Boetsch improperly and falsely admitted that defendant
19  sometimes masturbated to child porn, defendant has not established
20  that he did not say this during his interview.

21  2. Defendant has not established that a probation only plea
22  agreement was ever offered by the government.  Moreover, Boetsch
23  did argue for probation in the sentencing memorandum.  (Doc. #36 at
24  5-8).

25  3. In the plea agreement, defendant stipulated to a Guidelines

26  _____

27  [5] Defendant also argues that Boestch improperly conceded a guideline
calculation of 28 instead of 15.  The thirteen-level difference is
28  attributable to the enhancements defendant claims he should not have
received and therefore this claim is duplicative of his claim that Boestch
failed to object to "erroneous enhancements."

calculation that included the enhancements.  There was therefore no basis for contesting the factual predicate for the enhancements. To the extent there was a basis for arguing against the enhancements, Boestch did make those arguments.  She argued that on policy grounds the enhancements were overly punitive.  (Doc. #36 at 7-8; Doc. 60 (Sent. Tr. at 63-65)).

4. Boetsch did argue for a downward departure or probation. (Doc. #36 at 5-8).

Defendant has failed to establish that Boestch's performance was deficient or that he suffered any prejudice with respect to any of the claims raised in his sixth ground for relief.

**G. Ground Seven**

Defendant asserts that Boetsch was ineffective at sentencing because she failed to: (1) "object to the government"; (2) call a computer expert to testify that the defendant did not warrant enhancements for intentional use of a computer to access child pornography, for the number of images, for images of pre-pubescent children, and for images of children in sado-masochistic situations; and (3) argue for probation instead of prison.[6]

Defendant's first assertion is vague and does not identify what statements made by the government were false and not objected to by Boetsch.

Defendant's second assertion is likewise meritless, as defendant has not demonstrated that any expert would have given such testimony.

_____

[6] Defendant also asserts that Boetsch failed to "argue for the 'Plea Deal' she had told Movant he had entered into [for Probation]." (Mot. 12). As already noted, defendant has not established that the government had ever offered him a probation only plea deal.

1    Defendant's third assertion is also without merit.  Boetsch
2  did argue for a sentence of probation.  (Doc. #60 (Sent. Tr. 66-
3  72)).

4    Defendant has not established either deficient performance or
5  prejudice with respect to any of the claims raised in his seventh
6  ground for relief.

7    **H. Ground Eight**

8    Defendant asserts that he was prejudiced by counsel's
9  cumulative errors.  Ineffective assistance of counsel may be based
10  on the cumulative effect of errors.  *See Wade v. Calderon*, 29 F.3d
11  1312, 1319 (9th Cir. 1994).  Defendant has not established that
12  Boetsch's conduct fell below an objective standard of
13  reasonableness or that any errors were so prejudicial as to deprive
14  defendant of effective assistance of counsel.

15    **I. Additional Allegations**

16    The court has considered the entirety of defendant's
17  pleadings, including all allegations that do not appear in his
18  motion to vacate but instead are asserted as part of his
19  "declaration."  All allegations that are not specifically addressed
20  in this order are found to be without merit.

21  **V. Request for Evidentiary Hearing**

22    Defendant has requested an evidentiary hearing on his claims.
23  Under 28 U.S.C. § 2255(b), the court must conduct a hearing on the
24  defendant's claims "[u]nless the motion and the files and records
25  of the case conclusively show that the [defendant] is entitled to
26  no relief."  The court concludes the motion and the record in this
27  case conclusively show that defendant is not entitled to any relief
28  under § 2255.  Accordingly, the request for an evidentiary hearing

is **DENIED**.

**VI. Request for Discovery**

Defendant's petition contains a conclusory "request for discovery." (Doc. #45-1 at 5). Defendant does not identify any particular discovery he seeks.

Defendant does not have an automatic right to conduct discovery in this proceeding. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *United States v. Sewell*, 2012 WL 1928727, at *1 (E.D. Cal. 2012). The court may, however, "for good cause, authorize [the defendant] to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a) of the Rules Governing Section 2255 Proceedings. Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is . . . entitled to relief. . . ." *Bracy*, 520 U.S. at 908-09. "A party requesting discovery must provide reasons for the request." Rule 6(b) of the Rules Governing Section 2255 Proceedings. "The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." *Id.* Defendant does not specify any documents, interrogatories or requests for admission. Accordingly, the request for discovery is **DENIED**.

**VII. Request for Appointment of Counsel**

A "criminal defendant has no right to counsel beyond his first appeal." *Coleman v. Thompson*, 501 U.S. 722, 756 (1991). The decision to appoint counsel is generally discretionary. *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986), *cert. denied*, 481 U.S.

1023 (1987); *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th Cir.),
cert. denied, 469 U.S. 838 (1984). However, the court must appoint
counsel where the complexities of the case are such that denial of
counsel would amount to a denial of due process, *Chaney*, 801 F.2d
at 1196, and where the petitioner is a person of such limited
education as to be incapable of fairly presenting his claims. *See*
*Hawkins v. Bennett*, 423 F.2d 948 (8th Cir. 1970).

The defendant's assertions in this case are not complex and
defendant has been able to fairly present his claims. Accordingly,
the request for appointment of counsel is **DENIED.**

## VIII. Certificate of Appealability

In order to proceed with an appeal, defendant must receive a
certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App.
P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951
(9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550,
551-52 (9th Cir. 2001). Generally, a defendant must make "a
substantial showing of the denial of a constitutional right" to
warrant a certificate of appealability. 28 U.S.C. § 2253(c)(2);
*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner
must demonstrate that reasonable jurists would find the district
court's assessment of the constitutional claims debatable or
wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484).
In order to meet this threshold inquiry, the defendant has the
burden of demonstrating that the issues are debatable among jurists
of reason; that a court could resolve the issues differently; or
that the questions are adequate to deserve encouragement to proceed
further. *Id.*

This court has considered the issues raised by defendant, with

respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The court will therefore deny defendant a certificate of appealability.

**IX. Conclusion**

In accordance with the foregoing, defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (#45) is hereby **DENIED.**  Defendant's requests for discovery, counsel, and an evidentiary hearing are **DENIED.**  The court will not grant defendant a certificate of appealability.

IT IS SO ORDERED.

DATED: This 2nd day of May, 2016.

_Howard D McKibben_
_____
UNITED STATES DISTRICT JUDGE